Herman C. Ford and Nellie Ford v. Commissioner.
Ford v. Commissioner
Docket No. 47416.
United States Tax Court
T.C. Memo 1954-209; 1954 Tax Ct. Memo LEXIS 38; 13 T.C.M. (CCH) 1083; T.C.M. (RIA) 54314; November 30, 1954, Filed *38 Arnold Schlossberg, Esq., for the petitioners. A. Russell Beazley, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined deficiencies in income tax for 1949 and 1950 in the amounts of $315.60 and $304.34, respectively. Some of the Commissioner's adjustments are not contested. The only question for decision is whether certain expenditures of the petitioner, Herman C. Ford, are deductible as traveling expenses while away from home in the pursuit of business under section 23(a)(1)(A) of the Internal Revenue Code of 1939. The petitioners, by amendment to the petition, have made claim for deductions of additional amounts for alleged traveling expenses, and contend that taxes for each of the years involved have been overpaid. Findings of Fact The petitioners filed joint returns for the taxable years, and for that reason only, the wife of Herman C. Ford is a petitioner. The question relates solely to Herman C. Ford, and he is referred to hereinafter as the petitioner. The returns for 1949 and 1950 were filed with the collector for the district of Virginia. Petitioner is a licensed pipefitter and plumber. *39 He has followed this trade for 40 years. Since 1932, he has qualified as a journeyman plumber and steamfitter under the plumbing code of the City of Roanoke. Petitioner is a member of the pipefitters' union. He maintained his union membership during the taxable years. Since about 1927, petitioner has resided in Roanoke, Virginia; and since 1934 he has owned his home there where his wife and two dependents lived during 1949 and 1950. Rust Engineering Company, hereinafter referred to as Rust Co., has its offices in Pittsburgh, Pennsylvania. In the conduct of its business, it enters into contracts to make installations in plants and buildings, and to construct certain facilities. It contracts to do work in various parts of the country. Petitioner has been an employee of Rust Co. continuously since June 1941 although he has never had a written employment contract with his employer. He was employed originally as a subforeman. In April 1946, he was promoted to the position of a piping superintendent. Upon accepting employment with Rust Co., petitioner agreed that he would go to whatever city he was assigned. Since petitioner has been a piping superintendent, he has been ordered to *40 various construction jobs. The first was in Gary, Indiana, where he served for 17 months. It was understood that Rust Co. might transfer petitioner from one project to another within its discretion and that petitioner should train a supervisor to take over petitioner's duties in the event he should be ordered to another job. At the end of 1948, Rust Co. obtained a contract with American Viscose Company to construct a sewage disposal system and to do other work at the plant of American Viscose in Front Royal, Virginia. Petitioner began his duties in Front Royal on December 20, 1948. He worked there continuously until the early part of 1951. He was told by the general superintendent when he arrived on the job in December 1948, that 12 to 14 months would be required to complete the work for American Viscose. During the entire period in which petitioner worked at the American Viscose plant in Front Royal, he rented lodgings and ate meals in restaurants. He spent $1,820 in each of the years 1949 and 1950 for lodging and meals. He drove to his home in Roanoke nearly every weekend during the taxable years, making 46 trips in 1949 and 44 trips in 1950. His total automobile expense for *41 these trips amounted to $1,127 in 1949, and $1,038 in 1950. During 1949 and 1950, petitioner's compensation was based on an hourly rate with a guarantee of compensation for 40 hours per week. In addition, he was paid $5.50 per day for days of actual work. This additional payment was in accordance with an agreement of Rust Co. with the union which was in effect in 1949 and 1950, but was discontinued in 1951. The agreement with the union provided that the additional amount of $5.50 per day would be paid to all pipefitters and plumbers working on any job located beyond a certain distance outside the city of Richmond, Virginia. The additional sum was paid to union members even though their residence was located in the same town as a job was located. It was intended to compensate employees for their away-from-home expenses. The additional payments which petitioner received, over and above his guaranteed weekly compensation for services, amounted to $1,430 in 1949 and 1950. Rust Co. did not withhold tax on the additional payments. In his returns, petitioner reported the additional payments as "Expenses allowed by company for expenses away from home at work." Rust Co. reimbursed petitioner *42 for his traveling expenses when he went from one job to another, or when he went from his home in Roanoke to a new job. Although petitioner has maintained his plumber's license from the city of Roanoke continuously, he has not engaged in the plumbing business as an independent contractor since 1942. Petitioner, in 1951, was sent by Rust Co. from the American Viscose project in Front Royal, Virginia, to a job in Birmingham, Alabama. He worked in Birmingham for 30 days. He was then transferred to another job in Meadville, Pennsylvania, where he worked for 6 months. He was then sent to Lock Haven, Pennsylvania, where he worked for 6 1/2 months. Opinion The petitioner contends that his expenses for lodging and meals in Front Royal, Virginia, and his automobile expenses for weekend trips between Front Royal and Roanoke constitute deductible traveling expense in pursuit of business while away from "home" within the scope of section 23(a)(1)(A) of the 1939 Code. He deducted $1,820 for lodging and meals in each return for 1949 and 1950, which respondent disallowed. In his pleadings he had made claim for increases in the deductions in the amount of $1,127 for 1949, and $1,038 for 1950, *43 for the expense of weekend trips home. The total amounts of the deductions in question are $2,947 for 1949, and $2,858 for 1950. Respondent maintains that petitioner's "home", for the purposes of section 23 (a)(1)(A), was his post of duty, From Royal, Virginia, while he was there, since such post of duty was for an indefinite and indeterminate length of time and was not temporary; and that the expenses were personal or living expenses due to petitioner's desire to maintain the residence of himself and his family in Roanoke, Virginia. In this proceeding only the years 1949 and 1950 are involved. During those years petitioner's post of duty was Front Royal. His post of duty was neither Pittsburgh, where his employer's office is located, nor Roanoke, where petitioner's family home is located. Petitioner's employment in 1949 and 1950 did not involve traveling away from his post of duty. His weekend trips to his family home in Roanoke were for his personal convenience. The expense of the weekend trips resemble commuting expenses which cannot be deducted. Frank H. Sullivan, 1 B.T.A. 93. The expense of meals and lodging in Front Royal constitute living expenses incurred *44 in the place of petitioner's post of duty. Flowers v. Commissioner, 326 U.S. 465. It is now well established that the term "home" in section 23(a)(1)(A) is synonymous with "post of duty". A taxpayer's employment at a place may lack permanence, that is to say, it may be of an indefinite duration. But if such employment is not obviously temporary, the fact that it is of an indefinite duration does not deprive it of the status of employment at a "post of duty. Petitioner's employment at Front Royal was expected to continue for from 12 to 14 months. Actually, it extended over a period of more than 24 months. Petitioner did not anticipate that his assignment to the project in Front Royal would be of short or "temporary" duration. The fact of the matter is that the employment in Front Royal was to be for at least a year. While the assignment to Front Royal was not to be a permanent one, it clearly was not merely temporary. That its duration was indefinite does not bring it within the class of temporary employment, the termination of which within a short period could be foreseen. It is true that there was a general understanding with Rust Co. that job assignments might *45 be changed by it upon short notice. That is what actually happened in 1951 when petitioner was moved from Birmingham, Alabama, after being there 30 days, to Meadville, Pennsylvania. But the general understanding about the possibility of a job transfer is not determinative of the question now before us because the evidence does not show how real that possibility was in December 1948, or thereafter, with respect to the Front Royal assignment, and such possibility is well engated by the fact that petitioner's employment in Front Royal extended over more than two years. Each case stands on its own facts. For taxable years other than 1949 and 1950, the facts about petitioner's employment may be quite different from the facts relating to his employment in Front Royal from December 1948 until the early part of 1951. The question presented relates only to 1949 and 1950. It is controlled by Beatrice H. Albert, 13 T.C. 129. See, also, John D. Johnson, 8 T.C. 303; and Robert F. Green, 12 T.C. 656; Arnold P. Bark, 6 T.C. 851; Michael J. Carroll, 20 T.C. 382; and Virginia Ruiz Carranza (Zuri), 11 T.C. 224. The cases *46 of Coburn v. Commissioner, 138 Fed. (2d) 763; Harry F. Schurer, 3 T.C. 544; and E. G. Leach, 12 T.C. 20, are distinguishable on their facts. We do not overlook the point that under an agreement with the union, Rust Co. paid petitioner additional amounts, above his guaranteed compensation, at the rate of $5.50 per day, as it paid other employees who were members of the union. Of course, such additional payments must be included in petitioner's income. Ollie V. Kessler, 39 B.T.A. 646, 651. But to be deductible under section 23(a)(1)(A), they must be shown to be compensation for expenses of traveling away from home in pursuit of business, and under the facts, it must be held that they were not. It is held that all of the expenses in question were personal expenses, and that they were not traveling expenses within the provisions of section 23(a)(1)(A). Decision will be entered for the respondent.